**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MICHAEL S. SLAUGHTER,**

      **Plaintiff,**

   v.                              **Civil Action 2:19-cv-4867**
                                       **Judge Edmund A. Sargus, Jr.**
                                       **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**


**REPORT AND RECOMMENDATION**

Plaintiff, Michael S. Slaughter ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

**I.**     **PROCEDURAL HISTORY**

Plaintiff protectively filed his application under Title II of the Social Security Act for a period of disability and disability insurance benefits on February 11, 2015. (R. at 336–37.) He filed an application under Title XVI for supplemental security income that same day. (*Id*. at 345–46.) In both applications, Plaintiff alleged a disability onset of January 1, 2014. Plaintiff's

applications were denied initially on August 12, 2015, and upon reconsideration on November 23, 2015.  (*Id*. at 224–59, 262–83.)  Plaintiff sought a hearing before an administrative law judge.  (*Id*. at 309–10.)  Administrative Law Judge Matthew Winfrey (the "ALJ") held a hearing on April 3, 2018, at which Plaintiff, without the representation of counsel, appeared and testified.  (*Id*. at 124–48.)  Vocational expert Connie O'Brien-Heckler, M.Ed. (the "VE") also appeared and testified at the hearing.  (*Id*. at 148–52.)  On August 22, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 89–111.)  On September 5, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (*Id*. at 2–5.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

Plaintiff contends that the ALJ committed reversible error in assessing Plaintiff's mental residual functional capacity ("RFC").  (Pl.'s Statement of Errors, ECF No. 12; Pl.'s Reply, ECF No. 15.)  Specifically, Plaintiff alleges that the mental RFC assessed by the ALJ is not supported by substantial evidence because the ALJ failed to account for the following two limitations opined by psychological consultative examiner, Steven J. Meyer, Ph.D.: (1) that Plaintiff required a solitary work environment; and (2) that Plaintiff required additional assistance at times of learning and performing new tasks.  (*Id*.)

## II. THE ADMINISTRATIVE DECISION

On August 22, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 89–111.)  The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2020.  (*Id*. at 95.)  At step one of

the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since January 1, 2014, the alleged onset date of Plaintiff's disability.  (*Id*.)  At step two, the ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), alcohol abuse disorder, anxiety, and adjustment disorder with depressed mood.  (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 95–97.)

At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, repetitive tasks, but not at a production rate pace such as in assembly line work.  He can tolerate occasional interaction with supervisors and coworkers, but no interaction with the general public.  He cannot perform jobs involving conflict resolution or persuasion of others.  He can tolerate occasional changes in the workplace.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(*Id.* at 97.) In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including the report and opinion of psychological consultative examiner, Steven J. Meyer, Ph.D. (*Id.* at 101. *See also id.* at 450–55.) The ALJ assigned "partial weight" to Dr. Meyer's opinion, explaining as follows:

> Ste[v]en Meyer, [Ph.]D., believes that the claimant was capable of living independently, making important decisions affecting his future, and seeking appropriate community resources on his own. The claimant was diagnosed with posttraumatic stress disorder and adjustment disorder with depressed mood, with a GAF of 55, indicating moderate symptoms and psychosocial problems. Dr. Meyer noted that the claimant reported 13 years of education in mainstream classes and limited work history. He interacted regularly with his children engaged in activities with his girlfriend and children. His mental status examination was intact and he was oriented but seemed concrete and had somewhat decreased attention and recall likely due to psychological symptoms. His intellectual functioning appeared to fall in the borderline range but his abilities might be higher. Dr. Meyer expected the claimant to be able to perform simple to moderately complex routine instructions and tasks, in a work setting without strict production requirements, and with some additional assistance available as needed at times of learning and performing new tasks. He opined that the claimant could relate appropriately in a solitary/nonpublic work setting with occasional/intermittent interactions with coworkers and supervisors. He expected the claimant to be able to respond appropriately in a low stress work setting with additional assistance available as needed at times of change in routine, when compliant with his medications. Dr. Meyer's opinion is given partial weight as it is not consistent with the record as a whole, particularly with regard to the diagnosis of borderline intellectual functioning, which appears to underestimate the claimant's functioning based on his ability to pass a written driver's exam, receive an Associate's degree in culinary arts, perform semiskilled work as a cook, and drive a forklift. Dr. Meyer is not a treating source and saw the claimant only on the single occasion of the evaluation.

(*Id.* at 101.) The ALJ also considered the opinions of the State agency psychological consultants who reviewed Plaintiff's claim file initially and on reconsideration. (*Id.* at 104.) The ALJ afforded those opinions "partial weight because [they are] not wholly consistent with the evidence of record, and because Dr. Meyer's opinion is more consistent with the record as a whole." (*Id.*)

At step five of the sequential process, the ALJ found that Plaintiff is unable to perform his past relevant work as a cook or lawnmower. (*Id.* at 105.) Relying on the VE's testimony, the

4

ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id*. at 105–06.) Examples include warehouse worker, drycleaner worker, and maintenance worker. (*Id*. at 106.) The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment. (*Id*.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III. RELEVANT RECORD EVIDENCE

The undersigned will limit discussion of the evidence to those portions bearing on Plaintiff's contention of error.

**A. Mental Health Treatment Records**

The evidence includes records documenting Plaintiff's treatment for mental health concerns dating back to 2012. On January 27, 2012, Plaintiff was admitted for an overnight stay at Netcare following social media posts threatening suicide. (R. at 27–54.) Those records reflect that Plaintiff reported depressed mood and hopelessness. (*Id*. at 40.) Plaintiff was diagnosed with alcohol dependence and mood disorder. (*Id*. at 35.) His mental status at discharge was summarized as follows:

> [Plaintiff's] mood seems brighter and affect is expressive and mood congruent. [Plaintiff] reports no disturbances of perceptions and does not present with signs or symptoms of psychosis. [Plaintiff] seems to have fair insight and judgment seems intact at this time.

(*Id*. at 51.)

Plaintiff was not treated again until early-2015, at which time he began visiting the Ohio Hospital for Psychiatry. (*See id*. at 477–79.) Treatment notes from three visits over the course of 2015 reveal that Plaintiff's anxiety improved over that time—even enough for Plaintiff to travel by plane. (*See id*. at 473, 483.) Mental status examinations were unremarkable. (*Id*. at 473, 477, 485.)

5

Plaintiff began regular treatment with Michele R. Cash, DNP, on October 22, 2015. (*Id*. at 465–67.) Plaintiff visited Dr. Cash on a regular basis through the time of hearing. Generally, Dr. Cash reported that Plaintiff's thought process was logical and forward thinking with fair to good insight and fair judgment. (*See, e.g., id.* at 69, 72, 75, 84, 465, 499, 501, 505, 509, 513, 517, 521.) Occasionally, however, she noted that Plaintiff's thought content was obsessive related to the murder of his friends. (*See id*. at 465, 517.) Dr. Cash also occasionally noted that Plaintiff reported increased incidence of anxiety while at work. (*See id*. at 513, 521.) However, Plaintiff's symptoms generally improved when he was compliant with his prescribed medication regimen. (*See id*. at 68, 74, 84, 515, 517.)

### B. Consultative Examiner, Steven J. Meyer, Ph.D.

Steven J. Meyer, Ph.D. conducted a psychological evaluation of Plaintiff on July 6, 2015, at the request of the Ohio Division of Disability Determination. (*Id*. at 450–55.) As to Plaintiff's educational history, Dr. Meyer wrote that:

> [Plaintiff] graduated high school in 2005 in mainstream classes. He was an average student. He stated he did not like school and thought it was boring. He denied having any problems getting along with his classmates. He reported he had problems getting along with his teachers. He had attendance problems because he disliked school. He stated he played football and basketball. He reported he has training in culinary arts.

(*Id*. at 451.) Plaintiff also "reported he is slow learning." (*Id*.) With respect to his work history, Dr. Meyer wrote:

> [Plaintiff] reported he stayed to himself when he worked. He denied a history of problems getting along with supervisors. He reported he had some issues with expectations and pace because of his anxiety. He reported he handled work related stress by putting cold water on his face and taking his medication. He reported he is unable to work currently because of his anxiety.

(*Id*. at 451.) Dr. Meyer's report reflects the following, related to Plaintiff's activities of daily living:

6

> [Plaintiff] reported he gets up between 7 and 8 a.m., watches the news, gets clean[ed] up, checks Facebook, and texts with others. He stated he texts with his fiancé all day. He stated he does not see his friends. He reported that most of his friends have been shot and killed and that he has lost one per year since 2003. He was present at one of these deaths. He reported that he just came from his cousin's funeral. He stated he likes to sit at home. He stated he often sees his children and plays with them. They enjoy going to the pool that has slides. He stated that he and his fiancé go to the movies. He stated he watched Red, White, and Boom from his back porch. He reported he socializes daily with his grandmother, children, and fiancé. He stated that he and his fiancé share in the cleaning and cooking and his grandmother does his shopping. He stated he is able to read his mail, write a list, and text without autocorrect. He stated he took the written driver's exam. He was able to count change today. He reported his grandmother handles the bills.

(*Id*. at 452.) Further, Dr. Meyer described Plaintiff's performance on sensory and cognitive functioning tests as follows:

> [Plaintiff] was alert, clear, and oriented to person, place, time, and situation. He had no trouble understanding/following simple or moderately complex instructions. His abilities were low average on the digit-space recall test. He repeated seven digits forward and three backward (average performance is seven digits forward, five backward). He added seven serially to 49 with one error. He recalled within five minutes two out of three words presented to him during a delayed auditory recall task indicating low average short-term memory abilities. His abilities were poor on an abstraction-reasoning task that required him to provide a relationship between six pairs of words and he put forth little effort on the task. He provided one correct response, one partially correct response, and four incorrect responses. He was asked to interpret three common proverbs and he provided one correct response and two "I don't know" responses.  He correctly identified the current president of the United States and his immediate predecessor indicating average general information and long-term memory. His concentration was marginal, he gave up easily on tasks, and he worked at a slow pace.

(*Id*. at 453.) Based on his evaluation, Dr. Meyer diagnosed Plaintiff with PTSD and adjustment disorder with depressed mood. (*Id*.)

Dr. Meyer went on to provide his opinion on Plaintiff's functional abilities and limitations. As to his abilities/limitations in understanding, remembering, and carrying out instructions, Dr. Meyer opined that Plaintiff's "intellectual functioning was estimated at the borderline range, but his abilities may be higher." (*Id*. at 454.) In addition, Plaintiff "would be expected to be able to perform simple to moderately complex routine instructions and tasks."

7

(*Id*.) As to his abilities/limitations in maintaining attention and concentration and in maintaining persistence and pace to perform simple and multistep tasks, Dr. Meyer opined that Plaintiff "would be expected to be able to perform adequately in a work setting without strict production requirements, and with some additional assistance available as needed at times of learning and performing new tasks." (*Id*.) As to his abilities/limitations in responding appropriately to supervision and coworkers in a work setting, Dr. Meyer opined that Plaintiff "would be expected to be able to respond appropriately in a solitary/nonpublic work setting with occasional/intermittent interactions with coworkers and supervisors." (*Id*. at 454–55.) Finally, as to his abilities/limitations in responding appropriately to work pressures in a work setting, Dr. Meyer opined that Plaintiff "would be expected to be able to respond appropriately in a low stress work setting with medication and treatment compliance, and with additional assistance available as needed at times of change in routine." (*Id*. at 455.)

### C. State Agency Psychological Consultants

State agency psychological consultant Jennifer Swain, Psy.D. reviewed Plaintiff's claim file at the initial level. Dr. Swain rendered her opinions on August 11, 2015. (*Id*. at 239.) Among other records, Dr. Swain considered Dr. Meyer's report and gave it "great weight" based on "his consistency in his findings and other objective findings to substantiate his opinion in which the claimant is limited and able to do." (*Id*. at 237.) Dr. Swain opined that Plaintiff had moderate difficulties in both maintaining social functioning and maintaining concentration, persistence, or pace. (*Id*. at 235.) As to Plaintiff's mental RFC, Dr. Swain opined that Plaintiff is moderately limited in a number of areas, but can: perform simple to moderately complex routine tasks and instructions; focus on simple routine tasks; and adapt to changes that are readily explained prior to the change. (*Id*. at 237–39.)

State agency psychological consultant Mary K. Hill, Ph.D. reviewed Plaintiff's file on reconsideration. Dr. Hill rendered her opinions on November 23, 2015. (*Id*. at 270.) Dr. Hill also opined that Plaintiff is moderately limited in several areas. (*Id*. at 268–70.) She further opined that Plaintiff's psychological symptoms limit his ability to understand, remember, and follow instructions. As a result, Plaintiff should be limited to one-to-three step tasks, and may need extra time and repetition for new learning. (*Id*. at 268.) Dr. Hill also opined that Plaintiff's psychological symptoms impact his ability for sustained concentration, persistence, and pace, such that he should be limited to one-to-three step tasks with no more than moderate pace or production quotas. (*Id*. at 269.) Finally, Dr. Hill opined that Plaintiff should not be involved in conflict resolution or persuading others, and that he should work in a static environment where change is explained and gradually introduced. (*Id*. at 269–70.)

**D. Plaintiff's Hearing Testimony**

Plaintiff testified before the ALJ at the April 8, 2018 hearing. (*Id*. at 129–48.) Plaintiff testified that, at the time, he lived with his grandmother and did not have a driver's license, but relied on his girlfriend and public transit for transportation. (*Id*. at 133–34.) He further testified that he stopped school in the tenth grade[2] because he "couldn't get the learning thing down pat really." (*Id*. at 134.) As to his activities of daily life, Plaintiff stated that he doesn't grocery shop because he "do[es]n't know how," but that he is able to cook, wash dishes, do yardwork, and bathe and dress himself. (*Id*. at 140–41, 143.) He further reported that he has difficulty remembering things he sees on TV. (*Id*. at 141.) In addition, Plaintiff testified that he

---

[2] Plaintiff's true level of educational attainment is unclear from the record. Plaintiff testified before the ALJ that he completed only the tenth grade. However, he reported to Dr. Meyer that he graduated high school in mainstream classes and completed some training in culinary arts. (*See*, *supra*. *See also* R. at 451.)

9

experiences daily flashbacks and regular panic attacks triggered by being around other people. (*Id.* at 141–44.)

Plaintiff also testified about his ongoing psychiatric treatment. Plaintiff stated that he had been visiting Dr. Cash on a monthly basis for roughly two years. (*Id.* at 129.) He further testified that, although Dr. Cash recommended additional counseling, Plaintiff had not pursued any because "I have no interest in going." (*Id.* at 139.) Plaintiff attributed his disinterest to provider turnover, and the strain of having to "tell [his] whole story all over again." (*Id.* at 140.)

Finally, Plaintiff described a number of short-term and part-time jobs he had worked in previous years, including as a cook at Waffle House, Morgan's Foods, and Tim Horton's, a seasonal forklift operator at The Gap, and cutting grass on a self-employed basis. (*Id.* at 134–36.) He explained:

> [Plaintiff]: My disorder just completely distracts me when I'm trying to work and it, I get bored real fast. If I say something wrong due to my PTSD or if I get a memory and start thinking, I'll start crying, feel embarrassed, I'll leave the jobs.
>
> [ALJ]: . . . [W]hat prevents you from working?
>
> [Plaintiff]: My condition, the way I proceed about my day, how I proceed about my day, the memories stuck back in my head from my childhood. I think about it all day, all the time. I'm not good with people.

(*Id.* at 137–38.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff's sole contention of error is that the ALJ's assessed mental RFC is unsupported by substantial evidence because the ALJ failed to properly account for the following two limitations opined by Dr. Meyer: (1) that Plaintiff required a solitary work environment; and (2) that Plaintiff required additional assistance at times of learning and performing new tasks. (Pl.'s Statement of Errors, ECF No. 12; Pl.'s Reply, ECF No. 15.) In particular, Plaintiff asserts that, while the ALJ credited these opinions, he neither incorporated them into the hypotheticals posed to the VE or the RFC assessed in the administrative decision, nor explained his reasons for

11

declining to do so.  Plaintiff argues that such failure renders the administrative decision unreviewable, and that remand is therefore necessary.

The undersigned finds that ALJ's RFC is supported by substantial evidence.  A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC determination is expressly reserved to the Commissioner.  *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004).  However, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(c), 416.927(c); *see also* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

In the instant action, in support of his RFC determination, the ALJ offered a thorough, detailed discussion of the record evidence; accorded partial weight to the opinions of consultative examiner Dr. Meyer and also to the opinions of the State agency reviewing psychologists; and summarized his findings as follows:

> In sum, the above residual functional capacity assessment is supported by mental status examinations by the claimant's medication provider showing essentially normal functioning with occasional anxiety symptoms and fair judgment.  The claimant has held multiple jobs during the period under consideration, which he reports he could not sustain due to anxiety, however it is unclear to what degree alcohol and marijuana abuse affect his employability.  On one occasion, he told his nurse practitioner that he had not been to work for a week because of medication noncompliance, and testified that some of the work was seasonal and ended.  There are no occasions on which he was observed to be under the influence of alcohol or other substances during the period under consideration.

> Considering the medical evidence and opinions discussed above, as well as the claimant's activities, I find that the claimant's subjective complaints and alleged limitations are partially consistent with the objective evidence of record, although he retains the capacity to perform work activities with the limitations set above.

(R. at 102 (citations to the record omitted).) Consistent with the ALJ's explanation, mental status examinations of Plaintiff over years of regular visits were largely unremarkable. Treatment records regularly reflect that Plaintiff exhibited logical thought processes and fair judgment and insight. Although Plaintiff continued to experience breakthrough symptoms of anxiety and PTSD, Dr. Cash indicated that he responded well to medication. The record further supports that Plaintiff is capable of performing many activities of daily living, including cooking, washing dishes, socializing with family, texting with friends, watching TV, going to the movies with his significant other, and taking his five children to the pool. And, as the ALJ points out, Plaintiff passed a written driver's exam, received an Associate's degree in culinary arts, and performed semiskilled work as a cook and forklift driver. Finally, Dr. Meyer and Dr. Swain each opined that Plaintiff could perform "simple to moderately complex routine instructions and tasks," and Dr. Hill opined that Plaintiff could perform "one-to-three step tasks with no more than moderate pace or production quotas," and the RFC the ALJ assessed was *more* restrictive than these opinions in that it limited Plaintiff to simple, routine, and repetitive tasks, but not at a production rate pace.

Plaintiff's argument that substantial evidence does not support the RFC because the ALJ did not account for limitations Dr. Meyer opined is unavailing. As set forth above, the ALJ makes clear that he did not adopt Dr. Meyer's opinion, but instead assigned it only "partial weight," explaining that it was "not consistent with the record as a whole, particularly with regard to the diagnosis of borderline intellectual functioning, which appears to underestimate the

13

claimant's functioning based on his ability to pass a written driver's exam, receive an Associate's degree in culinary arts, perform semiskilled work as a cook, and drive a forklift." (*Id*. at 101.)  In short, the ALJ made clear that he did not adopt Dr. Meyer's opinions and assigned them only partial weight, and he offered an explanation for his finding that, at least in some regards, Plaintiff was not as limited as Dr. Meyer opined.

The undersigned also notes that, contrary to Plaintiff's apparent contention, even if the ALJ had adopted Dr. Meyer's opinion, he "is not required to recite the medical opinion of a physician verbatim in his [RFC] finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  For example, Plaintiff maintains that the RFC the ALJ assessed fails to account for Dr. Meyer's opinion that Plaintiff "would be expected to be able to respond appropriately in a solitary/nonpublic work setting with occasional/intermittent interactions with coworkers and supervisors."  (Pl.'s Statement of Errors at 8–9, ECF No. 12; R. at 455.)  The RFC the ALJ assessed precludes Plaintiff from interaction with the general public and limits him to only occasional interaction with supervisors and co-workers.  (R. at 97.)  The undersigned concludes that the RFC sufficiently accounts for Dr. Meyer's opinion relating to social interaction and that the ALJ was not required to offer an explanation for why he did not parrot Dr. Meyer's opined limitation verbatim.

Similarly, Dr. Meyer's opinion that Plaintiff could perform moderately complex instructions and tasks, but required additional assistance at times of learning and performing new [moderately complex] tasks is not necessarily inconsistent with the RFC the ALJ assessed.  Dr. Meyer offered no opinion on whether such additional assistance would still be required if Plaintiff were limited to only "simple, routine, repetitive tasks" as the ALJ found.  Regardless, the ALJ ultimately assigned Dr. Meyer's opinions only partial weight, concluded that Dr.

Meyer's opinions underestimated Plaintiff's intellectual functioning, and offered a detailed discussion in support of the RFC he assessed.  Thus, the undersigned finds that the ALJ did not err in either his consideration of Dr. Meyer's opinion or his RFC determination.

In sum, for the reasons set forth above, the undersigned concludes that substantial evidence supports the RFC and therefore **RECOMMENDS** that the Court **OVERRULE** Plaintiff's sole contention of error.

## VI.     DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VII.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE